Exhibit 1

| | | |
|---|---|---|
| DEWAYNE HARDEN<br>1520 Penrose Avenue<br>Baltimore MD 21223 | * | IN THE |
| | * | CIRCUIT COURT |
| Plaintiff | * | FOR |
| v. | * | HOWARD COUNTY |
| NCO FINANCIAL SYSTEMS, INC.<br>7595 Montevideo Road<br>Jessup, MD 20794 | * | CASE NO. 13-C-12-89530 |
| | * | |
| SERVE ON:<br>The Corporation Trust<br>Incorporated, Resident Agent<br>351 West Camden Street<br>Baltimore, Md 21201 | * | |
| | * | |
| | * | |
| Defendant | * | |

* * * * * * * * * * * * *

**COMPLAINT AND JURY DEMAND**

Plaintiff, Dewayne Harden, by his undersigned attorney, sues the Defendant and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action brought pursuant to the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq.* (the "FMLA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (the "ADA"), and the Maryland Fair Employment Practices Act, Md. State Gov't Article §§ 20-101 et seq., to obtain appropriate relief for Plaintiff. Defendant willfully interfered with Plaintiff's rights and privileges under the FMLA by discharging him because he requested leave on an intermittent basis to care for himself. The termination also violated his rights under federal and state laws prohibiting discrimination against persons with a

disability, and state law prohibiting discrimination on the basis of sexual orientation. As redress for the damages he has suffered, and in the future will suffer, Plaintiff seeks legal and equitable remedies sufficient to make him whole, as more fully set forth below.

**PARTIES**

2. Plaintiff is a resident of Baltimore City, Maryland.

3. During all times herein relevant Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2), in that he had been employed by Defendant NCO Financial, Inc. ("NCO") for more than 12 months at the time he made the leave request which is the subject matter of this action, and during the 12 month period immediately preceding his discharge, Plaintiff had worked in excess of 1,250 hours for NCO. As such, Plaintiff was and remains entitled to the rights and protections afforded by the FMLA as well as the ADA, .

4. NCO Financial Systems, Inc. ("NCO") is a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania. NCO's principal place of business in Maryland is located in Jessup, Howard County, Maryland. NCO employs more than 50 full-time employees within 75 miles of its Jessup office. NCO during all times herein relevant was an employer within the meaning of 29 U.S.C. § 2611(4), 42 U.S.C. § 2000e, and 42 U.S.C. § 12111 and, as such, was and is subject to all of the requirements imposed on employing entities by the FMLA, the ADA, and state anti-discrimination laws.

**GENERAL ALLEGATIONS**

5. Plaintiff began his employment with NCO on or about January 26, 2004, as a collector. During his employment at NCO, Plaintiff worked full-time as a telephone collector, attempting to collect debts owed to clients of NCO. Throughout his employment with

NCO, Plaintiff consistently performed his duties in an efficient, conscientious and professional manner. Until the last few months of his tenure, he occupied the highest tier of performers, and was compensated well for his efforts.

6. Plaintiff's direct supervisor was Kelvin Coleman until January 2011. When Mr. Coleman left the company, Cheryl Penn became Plaintiff's direct supervisor. Ms. Penn reported to Timothy DiPetris ("DiPetris"). He in turn reported to Linda Geisler, the general manager of the Maryland office of NCO.

7. Beginning in 2008, and continuing unabated until he left NCO, Plaintiff was subjected to a continuing course of harassment based on his sexual orientation, to wit, homosexual. In 2008, one of his supervisors eavesdropped on a personal telephone call and discovered Mr. Harden was gay. He and several other people mocked Mr. Harden by, among other things, playing the theme to the movie "Brokeback Mountain" loudly, and calling Mr. Harden names such as "Sparkle Princess." Although he complained, NCO closed the complaint without action. Ms. Geisler informed Mr. Harden that she could not relate to his complaint, since she was not gay. The comments and jokes did not end, however. Although he continued to make clear that the conduct was unwelcome and did not find the jokes funny, his supervisors continued the name-calling, and encouraged others to join in.

8. Plaintiff has hypertension, a physical impairment that substantially limits one or more life activities, including his neurological functioning. The mistreatment he experienced at work increased Plaintiff's stress levels, leading to an increase in his blood pressure levels and the frequency of his migraine headaches. At times, Plaintiff's headaches were sufficiently severe that they led to blurred vision and dizziness. Some days he could not get

out of bed for several hours until his migraine headache subsided. The high blood pressure and headaches prevented him from time to time from performing normal daily activities, including driving, talking, caring for himself, concentrating, communicating, and working.

9. Harden disclosed his hypertension and migraine disabilities to NCO and asked for a flexible schedule. The request was denied. The denial was unreasonable, because the business operated from 8:00 a.m. Eastern time to 8:00 p.m. Pacific time. Because the essential functions of Mr. Harden's job focused primarily on making phone calls to debtors, the specific hours he worked were not as important as the number of calls that he made and responses obtained.

10. Plaintiff applied for intermittent FMLA leave, and provided medical certification relating to his disabilities. NCO approved Plaintiff for intermittent FMLA leave in April 2011, retroactive to January, for the year 2011.

11. Plaintiff complied with all of NCO's policies regarding notifying his supervisors when he was going to be out for a day or a partial day, and with all of its policies regarding FMLA health certifications. He did not take more than twelve weeks of leave in any 12-month period.

12. Harden's supervisors complained about Harden and others who used intermittent FMLA, frequently stating or implying that they were not really ill, were taking advantage of the system, and were harming the department's productivity.

13. When Harden called in sick using FMLA time, his supervisors would not permit him to make up the lost hours later in the day, week or pay period. Employees who were absent for non-FMLA qualifying reasons were permitted to make up their time.

14. When Harden called in sick using FMLA time, his supervisors would permit his coworkers to call debtors who had been assigned to him. Harden had already begun the process of making settlements or installment payment arrangements with many of these debtors. When the coworkers reached the debtors that had been assigned to Mr. Harden and concluded a payment arrangement, they, not Plaintiff, received credit for the work. Employees who were absent for non-FMLA qualifying reasons did not have their accounts poached on days they were absent.

15. NCO also deprived Plaintiff of compensation earned monthly from some of his existing paying debtors. These were debtors who had already agreed, based on Plaintiff's efforts, to make installment payments, and ordinarily Plaintiff could expect to get credit for each subsequent payment by each of the payers. Upon information and belief, Plaintiff was deprived of this commission in order to discourage or punish his use of FMLA leave.

16. After Plaintiff complained of the deprivation of his ongoing payers, and the effect on his compensation, Geisler and DiPetris advised him that if he refrained from taking FMLA leave through the end of April, he would get at least some of his payers back. The continued hostility and threats to his compensation only exacerbated Plaintiff's stress and need for intermittent leave.

17. Plaintiff and two coworkers hired counsel and caused a demand letter to be sent on April 29, 2011, to NCO regarding the harassment and deprivation of accounts for which Plaintiff should get production credit.

18. Although Harden was once a top performer, his production numbers declined as he took off FMLA time that he could not make up, and as the harassment made his

life difficult at the jobsite. Nevertheless, he was at least as productive as a number of other employees on his team.

19. In 2011, NCO gave Mr. Harden several warnings based on his falling short of his quota. The majority of the workers in Mr. Harden's area fell short of quota in the first half of 2011. Although on information and belief many were placed on warnings, the warnings for the others did not lead to any further discipline.

20. On May 17, 2011, Plaintiff called in to speak to a supervisor about being ill with a severe headache that day. He was routed to a Human Resources person who told him that the company had been trying to reach him but did not know his phone number (although he had been at the same number all eight years of his employment at NCO). NCO informed Plaintiff that it was placing him on suspension without pay until further notification. The reason for the suspension was his failure to meet his quota. Plaintiff believed that he was on target to meet his quota that month. Once he was on suspension, however, he would be unable to raise his production, since he could not make any arrangements with debtors if he was not at work.

21. Other employees with production numbers worse than Plaintiff's remained employed, and were not put on suspension. These employees were identically situated to Plaintiff other than their not using FMLA intermittent leave. Plaintiff is aware of several employees who were on "final" warnings for up to a year, yet had been neither suspended nor terminated.

22. Plaintiff is also aware of other employees who used FMLA time who were publicly criticized on days they took FMLA time, and whose accounts were poached.

23. Because his indefinite suspension without pay prevented him from ever

meeting the requirements of his job, Plaintiff through counsel demanded to be terminated rather than remain in limbo, so that he could apply for unemployment benefits.

24. The hostile attitudes of his supervisors caused Plaintiff much psychological harm, including sleeplessness, anxiety, increased headaches, and other distress.

25. At the time of his termination, Plaintiff had not exhausted his twelve weeks' leave entitlement, and had otherwise complied with all legitimate requests from his employer.

26. Plaintiff filed a timely charge of discrimination against Defendant with the Maryland Commission on Human Relations, claiming that he was the victim of discrimination and retaliation on the basis of his disability and sexual orientation. More than 45 days have passed since Plaintiff filed his charge of discrimination. Plaintiff files this suit within two years of the termination of his employment by Defendant.

27. At the time he was terminated from NCO, Plaintiff had earned a total compensation package that included salary and benefits such as health, life, disability, and retirement benefits.

28. After his termination, Plaintiff visited health care providers, including counselors, to deal with his high blood pressure, migraines, and distress. He suffered and has continued to suffer from anxiety, and from severe emotional damage.

29. As a direct and proximate result of Defendant's extreme, outrageous and unlawful conduct complained of herein, Plaintiff has suffered, and in the future will suffer, back pay and fringe benefit losses, front pay losses, past and future out-of-pocket pecuniary losses, lost future earnings capacity, physical and mental pain and suffering, emotional distress, loss of

enjoyment of life, humiliation, loss of reputation, intimidation and inconvenience, and other compensable, non-economic injuries.

**FIRST CLAIM FOR RELIEF**
**(Violation of FMLA by Defendant)**

30. Plaintiff incorporates the allegations set forth in paragraphs 1 through 29 of this complaint as if fully alleged herein.

31. The FMLA provides, *inter alia,* that an eligible employee is entitled to up to 12 weeks of leave without pay during any 12-month period in order to provide care for one's own self-care needs, and that such eligible employee is entitled to be restored to the same or equivalent position at the conclusion of the leave.

32. At the time that Plaintiff first requested leave, he was suffering from a serious health condition as that term is defined in the FMLA.

33. Plaintiff's immediate supervisor and others at NCO evinced hostility toward Plaintiff's exercise of his rights under the FMLA. NCO placed Plaintiff on warnings shortly after his request for leave was approved, and treated him differently from employees who were absent for reasons not involving intermittent FMLA leave. Although Plaintiff's productivity was similar to many in his department, NCO took affirmative steps to sabotage his production numbers. Only Plaintiff was fired while on warning.

34. The company's conduct unlawfully interfered with, restrained and/or otherwise denied Plaintiff the opportunity to exercise, or to attempt to exercise, his rights under the FMLA.

35. Defendant's termination of Plaintiff's employment was in violation of the

FMLA, 29 U.S.C. § 2615(a), and was taken in retaliation for Plaintiff's exercise of his rights under the FMLA.

36. Defendant's unlawful conduct, as set forth above, was willful and wanton, and/or was done with malice or in reckless disregard for Plaintiff's rights under the FMLA.

37. Defendant's unlawful conduct, as set forth above, was not in good faith and Defendant lacked reasonable grounds for believing that this conduct was not a violation of 29 U.S.C. § 2615(a).

38. Defendant's unlawful conduct, as set forth above, was the proximate cause of the economic and non-economic injuries suffered by Plaintiff.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**SECOND CLAIM FOR RELIEF**
**(Retaliatory Discharge in Violation of the Americans with Disabilities Act and the Maryland State Government Code by Defendant)**

39. Plaintiff incorporates the allegations set forth in paragraphs 1 through 38 of this complaint as if fully alleged herein.

40. On information and belief, Defendant fired Plaintiff because Defendant regarded him as being less valuable and/or less reliable than similarly situated non-disabled employees whom it retained in the same position Plaintiff formerly occupied because of Plaintiff's medical condition and use of intermittent leave.

41. By and through its conduct, Defendant discriminated against Plaintiff on the basis of his disability when it refused to accommodate Plaintiff's disability by permitting him to work a more flexible 40 hour per week schedule, and when it terminated Plaintiff's employment because of his disability, its perception of Plaintiff as disabled, its record of

Plaintiffs disability, its perception of Plaintiff as less reliable or able than non disabled persons, and because Plaintiff requested and took intermittent medical leave and requested accommodations for his condition. This conduct violates the Americans with Disabilities Act and the Maryland Fair Employment Practices Act.

42. Defendant's wrongful termination of Plaintiff's employment was willful and wanton and/or was done with malice or with reckless indifference to Plaintiff's rights and privileges. The conduct alleged herein violates the Americans with Disabilities Act, as well as the Maryland State Government Code, Sections 20-601 et seq.

43. Defendant's wrongful termination of Plaintiff's employment proximately caused economic and non-economic damages to Plaintiff.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**THIRD CLAIM FOR RELIEF**
**(Unlawful Harassment and Retaliation Based on Sexual Orientation in Violation of Maryland State Government Code by Defendant)**

44. Plaintiff incorporates the allegations set forth in paragraphs 1 through 43 of this complaint as if fully alleged herein.

45. Defendant undertook a course of discriminatory and harassing treatment of plaintiff based on his sexual orientation, as alleged herein, including but not limited to creating a hostile and abusive working environment.

46. Plaintiff's supervisors regularly abused Plaintiff verbally, and made fun of his manner of dress and grooming, all based on his sexual orientation. NCO refused to intervene or stop the behavior. The harassment was unwelcome, which Plaintiff made clear to his supervisors. But when Plaintiff reported to Defendant's Human Resources Department about his

treatment, he was given no protection, nor did he feel he was believed. Because NCO took no action, others felt free to participate in the abusive conduct.

47. The hostile and abusive work environment was so severe and pervasive that it interfered with Plaintiff's ability to do his job, and with his psychological well-being.

48. As a result of the acts described herein, Plaintiff suffered and will continue to suffer serious mental anguish and extreme emotional distress, as well as economic losses.

49. Upon information and belief, Plaintiff was retaliated against for having complained about his treatment and the hostile work environment perpetuated and condoned by persons in supervisory positions, in that he, and not similarly situated heterosexual employees, was put on indefinite suspension and fired.

50. The conduct alleged herein violates the Maryland State Government Code, Sections 20-601 et seq.

51. Defendants' wrongful harassment, retaliation, and termination of Plaintiff's employment proximately caused economic and non-economic damages to Plaintiff.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court enter judgment in his favor against the Defendant, and that it order the following relief against Defendant:

A. Declare the unlawful conduct by Defendant complained of herein to be in violation of the FMLA, Title VII, the Americans with Disabilities Act, and the Maryland Fair Employment Practices Act;

B. Permanently enjoin Defendant, its agents, officers, successors, assigns and all

persons in active concert or participation with it, from engaging in any employment practice which interferes with, restrains or denies Plaintiff his rights under the FMLA, Title VII, the Americans with Disabilities Act, and the Maryland Fair Employment Practices Act,;

C. Enjoin Defendant from refusing to immediately reinstate Plaintiff to the rights and benefits of his position of Collector, with the corresponding compensation, benefits, bonuses, value of stock options, and company seniority as if Plaintiff had continuously held such a position since his termination in May 2011, or in the alternative, award front pay damages to Plaintiff in the total amount of his losses;

D. Award past and future economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, back pay and lost benefits, unpaid wages, front pay, and special damages comprised in part of, but not limited to, past and future out-of-pocket pecuniary losses;

E. Award a sum equal to Plaintiff's economic damages as liquidated damages for Defendant's violation of the FMLA which was not in good faith and was done without reasonable grounds for believing that such conduct was not a violation of the FMLA;

F. Award past and future non-economic damages, for all claims as allowed by State law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, intimidation and inconvenience;

G. Award punitive damages, for all claims as allowed by law, in an amount to be determined at trial;

H. Award attorney's fees and costs, including expert witness fees, as allowed by law;

I. Award pre-judgment and post-judgment interest; and

J. Grant such other and further relief as this Court deems just and proper.

Mary T. Keating
728 Deepdene Road
Baltimore, Maryland 21210
(410) 532-8900

Attorney for Plaintiff Dewayne Harden

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues of fact raised by his Complaint.

Mary T. Keating
728 Deepdene Road
Baltimore, Maryland 21210
(410) 532-8900

Attorney for Plaintiff Dewayne Harden